IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

IN RE: RODNEY T. NIETERT, Debtor                    No. 2:11-bk-74202
                                                    Ch. 7

OUTLANDER GRAVEL d/b/a
CARRICK TRUCKING                                    PLAINTIFF

v.                      2:12-ap-7018

RODNEY T. NIETERT                                   DEFENDANT

### ORDER AND OPINION

On April 30, 2010, Outlander Gravel d/b/a Carrick Trucking [Carrick Trucking] obtained a judgment against Rodney T. Nietert [the debtor] for $128,566.12 in the United States District Court, Western District of Arkansas [the District Court case].[1] Carrick Trucking's judgment was based upon the District Court's finding that the debtor had breached his contract with Carrick Trucking, converted Carrick Trucking's property, and was unjustly enriched when Carrick Trucking advanced funds to a construction company to complete a project that the debtor could not afford to fund. On September 15, 2011, the debtor filed this chapter 7 bankruptcy case. On February 2, 2012, Carrick Trucking filed this adversary proceeding, asserting that the debt owed to it by the debtor pursuant to the District Court judgment is nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6).[2] On February 9, 2012, the debtor filed an answer to Carrick Trucking's adversary

---

[1] The District Court case was styled *Carrick Trucking, Inc. d/b/a Outlander Gravel v. Rodney T. Nietert et al.*, assigned civil case number 09-2053, and decided by the Honorable Jimm Larry Hendren on April 30, 2010.

[2] Although Carrick Trucking's adversary complaint stated only § 523(a)(6) as a basis for nondischargeability, the debtor did not object when Carrick Trucking raised the § 523(a)(4) issue for the first time in its motion for summary judgment filed on March 12, 2012, or when Carrick Trucking again raised the (a)(4) issue at the July 16 trial; instead, the debtor responded to the (a)(4) argument each time it was raised by Carrick Trucking. Under Federal Rule of Civil Procedure 15, made applicable to this adversary proceeding

complaint. On July 16, 2013, the Court held a trial on the adversary complaint and answer. At the conclusion of the trial, the Court took the matter under advisement. The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I). For the reasons stated below pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court finds that debts owed to Carrick Trucking totaling $119,869.40 are nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6).

**Background**[3]

On June 4, 2008, Outlander Tree Services, Inc. [Outlander], a corporation owned by the debtor and Tim Johnson [Johnson], entered into a contract to purchase a gravel pit located in Waldron, Arkansas from Jerry Don Hattabaugh [Hattabaugh].[4] Soon after Outlander started operating the gravel pit, the debtor realized that the operation could not produce its main product (a type of gravel) fast enough to keep up with the demand. The debtor contacted Carrick Trucking, an experienced gravel crushing company located in Michigan, to obtain assistance for Outlander. On July 27, 2008, Outlander and Carrick

---

by Federal Rule of Bankruptcy Procedure 7015, the Court finds that the debtor impliedly consented to trying the (a)(4) issue. Fed. R. Civ. P. 15 ("when an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.").

[3] The Court adopts the findings of fact contained in the District Court opinion and also considers the evidence presented at the July 16 trial to the extent that it does not conflict with the District Court's previous findings. *See Franks v. Thomason*, 4 B.R. 814, 821 (N.D. Ga. 1980) ("facts that were actually litigated and necessary to the decision in the court that rendered the judgment, and that are discernible from the record in the case, should not be reopened [by the bankruptcy court] absent a compelling reason to avoid injustice.")

[4] The contract between Outlander and Hattabaugh was not introduced into evidence at the July 16 trial. However, the District Court found that pursuant to the contract between Outlander and Hattabaugh, the debtor executed a quitclaim deed transferring his interest in the gravel pit to Hattabaugh, which Hattabaugh (acting as an escrow agent) kept in his possession. The contract provided that in the event of the debtor's default, the quitclaim deed would be "delivered" to Hattabaugh.

Trucking entered into a written contract [the crushing contract].[5] The crushing contract provided that:

- Outlander would be responsible for blasting rock to be crushed into gravel and for sales of gravel;
- Carrick Trucking would provide all necessary equipment to crush the gravel and be responsible for all costs incurred in processing it;
- Outlander would pay Carrick Trucking 70% of the gross income received by Outlander for sale of the gravel;
- processed material would be carried in Carrick Trucking's inventory until paid for by Outlander;
- Carrick Trucking would have the crushing work for all materials at the gravel pit for the life of the gravel pit; and
- if Outlander sold the gravel pit, Carrick Trucking would have the first option of crushing for the new buyers or would be "compensated" by Outlander.

Carrick Trucking moved its crushing equipment from Michigan to Arkansas and began operations on August 2, 2008. In mid-November 2008, the owners of Carrick Trucking, Gail and Dean Carrick [the Carricks], visited the gravel pit unannounced. While the Carricks were visiting the gravel pit's office, they discovered that Outlander had collected cash receipts totaling $10,000.00 but had not accounted for those funds to Carrick Trucking. When the Carricks began investigating the circumstances surrounding the unaccounted for $10,000.00, Johnson (who jointly owned Outlander with the debtor) and a female employee who had been hired by Carrick Trucking to work in the office of the gravel pit both disappeared.[6] Subsequently, the debtor paid Carrick Trucking the

---

[5] Neither party introduced the crushing contract into evidence at the July 16 trial. The crushing contract provisions referenced in this Order are as stated in Judge Hendren's April 30, 2010 Memorandum Opinion in the District Court case. Judge Hendren's Memorandum Opinion was introduced into evidence at the July 16 trial.

[6] Johnson had no subsequent contact with the debtor or Carrick Trucking. After Johnson absconded, the debtor abandoned Outlander and formed a new corporation,

3

missing $10,000.00, and Carrick Trucking remitted to Outlander its 30% share.

In March 2009, the debtor failed to make his monthly payment to Hattabaugh on the gravel pit. The debtor also told the Carricks that he was having financial problems that rendered Outlander unable to meet its contractual obligation to fund the upcoming blast scheduled for April 23, 2009 [April 23 blast]. On April 14, 2009, the debtor, Gail Carrick, and Hattabaugh met at the bank holding Hattabaugh's mortgage on the gravel pit to discuss the debtor's financial situation [the April 14 meeting]. During the April 14 meeting, Carrick Trucking expressed interest in buying the gravel pit and requested information regarding the amount owed on Hattabaugh's mortgage on the gravel pit.[7] Also during the April 14 meeting, Hattabaugh agreed to extend the due date of the debtor's missed March payment to April 16, 2009, based, in part, upon the debtor's "potential sale of the land and business." On April 23, 2009, Carrick Trucking paid a construction company $17,996.72 to conduct the blast (using $9,300.00 that Carrick Trucking owed–but had not yet paid–to the debtor and advancing the remaining cost of the blast from its own funds).

On April 28, 2009, the debtor contacted James Steven Black [Black] to gauge Black's interest in buying the gravel pit. Black agreed to buy it the same day. The debtor, Black, and Hattabaugh met with an attorney (hired by the debtor) who drafted a contract for the sale of the gravel pit from Hattabaugh to Black.[8] At the debtor's direction, the attorney

---

Samaritan Holdings, Inc. [Samaritan]. However, the District Court concluded as a matter of law that neither Outlander nor Samaritan were true corporations, but were instead the debtor's alter egos.

[7] Carrick Trucking did not receive the information it requested and no further discussions about Carrick Trucking purchasing the gravel pit took place.

[8] Like the other two contracts relevant to this case (the contract between Outlander and Hattabaugh and the crushing contract between Carrick Trucking and Outlander), the contract between Black and Hattabaugh was not introduced into evidence at the July 16 trial.

included a provision that the "scales, outbuilding, and all materials on the ground including crushed gravel are included in this transaction and become the personal property of Purchaser [Black]."[9] At the debtor's request, the attorney also prepared an eviction notice stating that Hattabaugh had regained possession of the gravel pit and had sold it to Black, and instructing Carrick Trucking to remove its equipment and personal effects from the gravel pit within three days. Also on April 28, 2009, the debtor (accompanied by a deputy sheriff) went to the gravel pit and served the Carricks with the eviction notice. Carrick Trucking ceased its operation at the gravel pit. In the weeks that followed, the debtor contacted customers of the gravel pit operation and collected $5,692.00 in accounts receivable. The debtor did not remit to Carrick Trucking its 70% share of those receivables.

**Findings of Fact and Conclusions of Law**

The District Court found that the debtor converted Carrick Trucking's gravel (worth $115,885.00) when he facilitated the deal between Black and Hattabaugh that included the transfer of Carrick Trucking's gravel to Black. The District Court also found that the debtor failed to remit to Carrick Trucking its 70% share of the $5,692.00 in accounts receivable that the debtor collected after he returned the gravel pit to Hattabaugh. Whether these debts are nondischargeable under the bankruptcy code–specifically, under § 523(a)(4) or (a)(6)–was not before the District Court. As discussed below, the Court finds that a debt in the amount of $115,885.00 is nondischargeable under § 523(a)(4) and (a)(6) and a debt in the amount of $3,984.40 is nondischargeable under § 523(a)(4) [10]

---

[9] Because neither Black nor Hattabaugh could read well enough to understand the contract the debtor's attorney prepared for them, they relied upon the debtor's representations about the content of the contract between Black and Hattabaugh.

[10] The District Court also found that the debtor was unjustly enriched by $8,687.00 (the amount that Carrick Trucking paid from its own funds for the April 23 blast). The $8,687.00 was included in the amount of the judgment entered against the debtor in District Court, but Carrick Trucking did not allege that the portion of the District Court judgment attributable to unjust enrichment is nondischargeable.

## I. Section 523 (a)(4)

Section 523(a)(4) of the bankruptcy code provides that a debtor's discharge does not include any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). This subsection provides for three separate causes of action: (1) fraud while acting in a fiduciary capacity; (2) embezzlement; and (3) larceny. *McMahon & Tystar Petroleum Corp. v. Politte* (*In re Politte*), No. 3:04-ap-07215, 2007 WL 4556689, at *2 (Dec. 19, 2007).

### A. Fraud or defalcation

The fiduciary relationship referenced in § 523(a)(4) "[m]ust be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Tudor Oaks Ltd. P'shp v. Cochrane* (*In re Cochrane*), 124 F.3d 978, 984 (8th Cir. 1997). The District Court did not address whether a fiduciary relationship existed between the debtor and Carrick Trucking, and Carrick Trucking presented no evidence to suggest the existence of an express or technical trust on July 16.[11] Therefore, as the Court found in its April 17, 2012 order denying Carrick Trucking's motion for summary judgment, Carrick Trucking is not entitled to a determination of nondischargeability under § 523(a)(4) based upon the debtor's alleged "fraud or defalcation while acting in a fiduciary capacity."

### B. Embezzlement

For purposes of § 523(a)(4), embezzlement is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Arvest Mortgage, Co. v. Nail* (*In re Nail*), 680 F.3d 1036, 1042 (8th Cir. 2012) (quoting *In re Phillips*, 882 F.2d 302, 304 (8th Cir. 1989)). Carrick Trucking

---

[11] During closing arguments on July 16, Carrick Trucking's counsel argued that a fiduciary relationship existed between the debtor and Carrick Trucking. However, argument of counsel is not evidence, and based upon the evidence before this Court, the Court finds that no fiduciary relationship existed between the parties. *See U.S. v. Rusan*, 460 F.3d 989, 993 (8th Cir. 2006).

contends that when the debtor orchestrated the sale of Carrick Trucking's gravel from Hattabaugh to Black, he not only converted the gravel (as the District Court found), but embezzled it. For Carrick Trucking to prevail under (a)(4)'s embezzlement exception to discharge, it must prove three elements by a preponderance of the evidence: (1) that the debtor was rightfully in possession of Carrick Trucking's property; (2) that the debtor appropriated Carrick Trucking's property for a purpose other than the purpose for which he lawfully possessed it; and (3) that the circumstances indicate fraud. *See Jones v. Hall* (*In re Hall*), 295 B.R. 877, 882 (Bankr. W.D. Ark. 2003) (*citing Nat'l Bank of Commerce of Pine Bluff* (*In re Hoffman*), 70 B.R. 155, 162 (Bankr. W.D. Ark. 1986)).

To meet the first element necessary for embezzlement, the debtor must have initially been in rightful possession of Carrick Trucking's property. *Id*. Under the crushing contract, the debtor was responsible for blasting the rock. After each blast, Carrick Trucking used equipment located at the gravel pit to crush the rock into gravel, at which time the finished product became Carrick Trucking's property and remained Carrick Trucking's property until the gravel was sold. Whether as rock (the debtor's property) or as gravel (Carrick Trucking's property), the property was continuously located at the debtor's gravel pit until it was sold. Therefore, the Court finds that the debtor was rightfully in possession of Carrick Trucking's gravel.

To satisfy the second element required for embezzlement, the debtor must have appropriated Carrick Trucking's gravel for a use other than the use for which he lawfully possessed it. *Id*. Appropriation is the "[t]he exercise of control over property; a taking of possession" Black's Law Dictionary 98 (7th ed. 1999), while conversion is the exercise of "'dominion over [] property in violation of the rights of the owner entitled to possession.'" *In re Hoffman*, 70 B.R. at 163 (quoting *Auston v. Loyd*, 533 F. Supp. 737, 740 (W.D. Ark. 1982)). The District Court found that the debtor converted Carrick Trucking's gravel when he "wrongfully caused the purported sale of the gravel inventory that belonged to Carrick Trucking." Because the legal definition of conversion includes the exercise of control over property–an appropriation–the Court finds that the debtor

7

appropriated Carrick Trucking's gravel. The Court must next determine if the debtor appropriated the gravel for a use other than that for which he lawfully possessed it. The debtor lawfully possessed Carrick Trucking's gravel because the crushing contract dictated, among other things, that selling the gravel was the debtor's responsibility. Once the gravel sold, Carrick Trucking retained 70% of the proceeds and the debtor received 30%. Simply stated, the debtor lawfully possessed Carrick Trucking's gravel so that he could negotiate the sale of the gravel and generate income for Carrick Trucking and himself. The Court finds that when the debtor arranged for Carrick Trucking's gravel to be transferred to Black without payment to Carrick Trucking pursuant to the crushing contract, the debtor appropriated Carrick Trucking's gravel for a use other than the use for which he lawfully possessed it.

To find the third element necessary for embezzlement, the circumstances must indicate fraud. *Id*. For purposes of embezzlement under (a)(4), fraudulent intent may be shown by the debtor's moral turpitude or by the debtor's attempt to harm a secured creditor. *In re Hoffman*, 70 B.R. at 163.[12] The circumstances surrounding the transfer of Carrick Trucking's gravel to Black were largely manipulated by the debtor–he contacted Black to buy the gravel pit, retained his own attorney to draft the contract between Black and Hattabaugh, and directed his attorney to include the contractual provision transferring Carrick Trucking's gravel to Black despite both Black and Hattabaugh being unable to

---

[12] At the July 16 trial, Gail Carrick testified that the crushing contract provision stating that the gravel became Carrick Trucking's property until it was sold was in the nature of a security interest and that similar provisions are common in the industry. The debtor did not dispute that this provision in the crushing contract made Carrick Trucking a secured creditor. The intent to harm under (a)(4) is "something less than the malicious intent" required under (a)(6) "since Congress chose to create an exception to discharge for embezzlement without the additional requirement of proof of malice." *In re Hoffman*, 70 B.R. at 163. It is unclear to the Court whether the debtor succeeded in harming Carrick Trucking by the remarks he made to Black. Black stopped running the gravel pit in August or September 2009 and at the time of the District Court trial, Carrick Trucking was performing crushing operations for the new owner of the gravel pit. However, the debtor's attempt to harm Carrick Trucking is sufficient to indicate fraud for purposes of embezzlement under (a)(4). *See Id.*

8

read.[13] Additionally, the District Court found that Hattabaugh wanted his own attorney to review the contract that the debtor's attorney drafted, but Hattabaugh agreed not to do so when he was offered an additional $10,000.00 to consummate the deal without delay.[14]

The District Court also found that during the meeting between the debtor, Black, and Hattabaugh that resulted in the conversion of Carrick Trucking's gravel, the debtor "criticized Carrick Trucking to Black in such a manner as to insure that Black would not retain Carrick Trucking to do crushing at the [gravel pit]." At the July 16 trial, the debtor testified that he realized that Carrick Trucking would be harmed financially if Black did not use Carrick Trucking to perform crushing operations when Black bought the gravel pit from Hattabaugh. The debtor's July 16 admission that he realized Carrick Trucking would be harmed if Black did not allow Carrick Trucking to crush for Black, combined with the District Court's finding that the debtor told Black not to use Carrick Trucking for his crushing work leads this Court to conclude that the debtor attempted to financially harm Carrick Trucking and, therefore, shows the debtor's fraudulent intent. *Id.* The Court finds that the machinations of the debtor surrounding the transfer of Carrick Trucking's gravel to Black combined with the debtor's unnecessary and disparaging comments to Black regarding Carrick Trucking are circumstances that indicate fraud. The three elements necessary to find embezzlement are satisfied, and the Court finds that

---

[13] The District Court found that Hattabaugh knew that the provision transferring Carrick Trucking's gravel to Black was included in the contract between himself and Black, and found that Hattabaugh and Black (in addition to the debtor) converted Carrick Trucking's gravel.

[14] The District Court did not specifically state that it was the debtor who offered Hattabaugh the additional $10,000.00. However, the debtor testified on July 16 that he recalled Hattabaugh asking him (the debtor) for $10,000.00 in consideration of Hattabaugh not suing the debtor for the breaching his contract with Hattabaugh to buy the gravel pit. Although the debtor testified that he did not recall whether he agreed to pay Hattabaugh the additional $10,000.00, and the debtor's reason for the $10,000.00 contradicts the District Court's finding, the debtor's testimony indicates that he was the one who offered to pay Hattabaugh the $10,000.00 to close the deal without waiting for Hattabaugh's attorney to review the contract.

the debtor embezzled Carrick Trucking's gravel. Therefore, the Court finds that the debt owed to Carrick Trucking in the amount of $115,885.00 is nondischargeable pursuant to § 523(a)(4).

### C. Larceny

At the July 16 trial, Carrick Trucking argued that the debtor committed embezzlement based upon the District Court's finding that after the debtor relinquished the gravel pit to Hattabaugh in April 2009, he collected $5,692.00 in accounts receivable and failed to remit to Carrick Trucking its 70% share.[15] However, in order to find embezzlement, the debtor's initial taking of the property must have been lawful. *In re Politte*, No. 3:04-ap-07215, 2007 WL 4556689, at *5 (Dec. 19, 2007). If the debtor did not have the right to collect the accounts receivable, then the Court cannot find embezzlement. *Id.*

The District Court did not make a specific finding regarding whether the debtor had the right to collect the $5,692.00 in receivables, and neither party introduced the crushing contract into evidence on July 16. The debtor testified on July 16 that he was allowed to collect receivables under the crushing contract prior to the discovery of the missing $10,000.00 in cash receivables in November 2008. In contrast, Gail Carrick testified unequivocally that the debtor never had the right to collect receivables under the crushing contract. Despite the parties' disagreement regarding whether the debtor had the right to collect accounts receivable *prior* to November 2008, both Gail Carrick and the debtor testified that *after* the incident in November 2008, Carrick Trucking–not the debtor–had the right to collect the accounts receivable. Because the debtor did not have the right to collect the accounts receivable during the relevant time period, the Court cannot find embezzlement and will instead determine whether a finding of larceny under § 523(a)(4) is warranted.

---

[15] The debtor collected these accounts receivable at some point after the debtor had returned the gravel pit to Hattabaugh in April 2009 and was no longer doing business with Carrick Trucking.

For purposes of § 523(a)(4), larceny is the "wrongful taking and carrying away of the property of another with the intent to convert such property to the taker's use without the consent of the owner." *Reshetar Sys. v. Thompson* (*In re Thompson*), 458 B.R. 504, 510 (8th Cir. 2011) (quoting *Kansas Bankers Surety Co. v. Eggleston* (*In re Eggleston*), 243 B.R. 365, 378 (Bankr. W.D. Mo. 2000)). As stated above, both the debtor and Gail Carrick testified that the debtor had no right to collect receivables after November 2008. Gail Carrick further testified that Carrick Trucking never authorized the debtor to collect the receivables. Based upon the debtor's admission that after November 2008 he did not have the right to collect accounts receivable, Gail Carrick's testimony that Carrick Trucking did not consent to the debtor collecting receivables, and the District Court's finding that the debtor did in fact collect $5,692.00 in accounts receivable after April 2009, the Court finds that the debtor wrongfully took possession of Carrick Trucking's accounts receivable.

The Court must next determine if the debtor intended to convert the receivables to his own use. *Id*. On July 16, the debtor repeatedly denied having any memory of collecting the accounts receivable. He also testified that he did not recall hearing about the issue during the District Court trial, but then immediately stated that he would "have no problem making that right." The debtor admitted that 70% of the $5,692.00 in receivables that he "apparently" collected rightfully belonged to Carrick Trucking. Even if the debtor had no recollection of collecting the receivables prior to the District Court trial, his memory would have been refreshed by the judgment entered against him for $3,984.40 (Carrick Trucking's 70% share of the receivables the debtor collected) by the District Court on April 30, 2010. Despite the debtor's representation to the Court that he was willing to pay Carrick Trucking its 70% of the receivables that he had collected, he had not done so as of the July 16 trial in this court, and the Court concludes that the debtor intended to–and did–convert Carrick Trucking's accounts receivable to his own use. The Court finds that the debtor committed larceny when he collected $5,692.00 in accounts receivable and retained Carrick Trucking's 70% share in the amount of $3,984.40 for his own use. Therefore, the Court finds that the debt owed to Carrick

Trucking in the amount of $3,984.40 is nondischargeable pursuant to § 523(a)(4).

## II. Section 523 (a)(6)

Section 523(a)(6) provides that a debt is nondischargeable if it resulted from a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). For a debt to be nondischargeable in the Eighth Circuit under subsection (a)(6), the injury that gave rise to the debt must be both a willful injury and a malicious injury. *In re Thompson*, 458 B.R. at 510. "In the context of [§] 523(a)(6), 'willful' means 'intentional or deliberate.'" *Mercantile Bank of Ark. v. Speers* (*In re Speers*), 244 B.R. 142, 145 (Bankr. E.D. Ark. 2000) (quoting *Barclays Am. Bus. Credit, Inc. v. Long* (*In re Long*), 774 F.2d 875, 880 (8th Cir. 2005)). "'Malicious'" refers to conduct 'targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.* (quoting *Fischer v. Scarborough* (*In re Scarborough*), 171 F.3d 638, 641 (8th Cir. 1999)).

Carrick Trucking contends that because the District Court found that the debtor committed the intentional tort of conversion, the resulting debt is nondischargeable under § 523 (a)(6). A debt is not excepted from discharge under (a)(6) solely because it arises from the intentional tort of conversion absent a showing of malice. *In re Long*, 774 F.2d at 881 (conversion of property alone is not enough to prevent discharge under § 523(a)(6)); *but see In re Speers*, 244 B.R. at 145 ("[i]n misappropriating the sale proceeds in which he had no legal or equitable interest, the [d]ebtor acted with malice . . . ." ). However, because "intentional torts generally require that the actor intend the consequences of an act, and not just the act itself," an intentional tort such as conversion *does* satisfy the "willful injury" component of (a)(6). *Osborne v. Stage* (*In re Stage*), 321 B.R. 486, 492-93 (B.A.P. 8th Cir. 2005) (internal citation omitted). Because the District Court found that the debtor committed the intentional tort of conversion, the Court finds that the debtor willfully injured Carrick Trucking. The Court must next examine whether the debtor also maliciously injured Carrick Trucking.

12

The "malicious injury" requirement of (a)(6) is met if, "in committing the intentional tort, the perpetrator intended the resulting harm, or the harm was substantially certain or nearly certain to result." *Quadrangle Enters v. Harper* (*In re Harper*), 378 B.R. 836, 850 (Bankr. E.D. Ark. 2007) (*citing In re Stage*, 321 B.R. at 493). Because it is difficult to establish intentional harm, courts may consider in an objective manner whether it was likely that the harm would occur as a result of the debtor's conduct when evaluating intent. *Id.* (*citing In re Long*, 774 F.2d 875, 881 (8th Cir. 2005)). In this case, the Court finds that harm to Carrick Trucking was almost certain to result from the debtor's conversion of Carrick Trucking's gravel–Carrick Trucking had paid for the April 23 blast largely from its own funds, had crushed the rock into gravel, and as a result of the debtor's conversion, could no longer realize a profit from the finished product. The debtor offered no justification for instructing his attorney to include a provision in the contract between Black and Hattabaugh that transferred Carrick Trucking's gravel to Black. The Court finds that the debtor intended to harm Carrick Trucking, and, as a result, maliciously injured Carrick Trucking. Because the debtor both willfully and maliciously injured Carrick Trucking, the Court further finds that the debt owed by the debtor to Carrick Trucking in the amount of $115,885.00 is nondischargeable under § 523(a)(6).

## Conclusion

For the reasons stated above, the Court finds that a debt in the amount of $115,885.00 is nondischargeable under § 523(a)(4) and (a)(6), and a debt of $3,984.40 is nondischargeable under § 523(a)(4), for a total nondischargeable debt owed by the debtor to Carrick Trucking of $119,869.40.

IT IS SO ORDERED.

/s/ Ben Barry
Ben Barry
United States Bankruptcy Judge
Dated: 10/10/2013

cc: Eric Soller, attorney for debtor
Josh Bujega, attorney for Carrick Trucking
Thomas E. Robertson, chapter 7 trustee
United States Trustee